UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBRA ANN ELLIOTT,

    Plaintiff,

v.                                          Case No. 2:19-cv-713-NPM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

Debra Ann Elliott seeks judicial review of a denial of her application for supplemental security income. The Commissioner filed the transcript [1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 24). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.**     **Eligibility for Disability Benefits and the ALJ's Decision**

    **A.**     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous

---

[1] Cited as "Tr." followed by the appropriate page number.

period of not less than twelve months.[2] The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[3]

### B. Procedural history and factual background

Elliott was born in October 1968 and has at least a high school education. Elliott has no past employment that qualifies as past relevant work. (Tr. 23).

On May 26, 2017, Elliott applied for supplemental security income, claiming she was unable to work due to disabling conditions beginning January 1, 2008, and later amended this date to June 9, 2017. (Tr. 39, 113, 195-208). This claim for benefits was administratively denied initially on November 1, 2017, and upon reconsideration on January 4, 2018. (Tr. 113, 130).

At Elliott's request, Administrative Law Judge Ryan Johannes ("ALJ") held a hearing on January 17, 2019, concerning the denial of supplemental security income benefits. (Tr. 30-63). On April 22, 2019, the ALJ issued a decision and found Elliott not disabled since the date the application was filed. (Tr. 15-24).

On August 6, 2019, the agency's Appeals Council denied Elliott's request for review. (Tr. 1-5). She then filed a Complaint (Doc. 1) with this Court on September

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

30, 2019, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 21).

### C. The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (internal quotations omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the

3

Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. §§ 404.1512, 416.912 (directing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, at step one of the evaluation, the ALJ found Elliott had not engaged in substantial gainful activity since the application date. At step two, the ALJ characterized Elliott's severe impairments as: "cervical spondylosis with status

4

post anterior cervical discectomy and fusion at two levels in 2003, lumbar degenerative disc disease at two levels with no impingement and no stenosis diagnosed in August 2008, mild to moderate bilateral carpal tunnel syndrome (CTS), right eye vision loss, left hip pain." (Tr. 17). At step three, the ALJ determined Elliott did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 18).

    As a predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant can occasionally balance, stoop, and climb stairs or ramps, never kneel, crouch, crawl, or climb ladders and scaffolds, frequently handle and finger, avoid all environments with moving mechanical parts and unprotected heights, and the claimant has monocular vision with no depth perception and no field of vision on the right.

(Tr. 19).

    The ALJ determined Elliott has no past relevant work. (Tr. 23). Relying on the testimony of a vocational expert at step five, the ALJ found Elliott could perform other jobs that existed in significant numbers in the national economy. (Tr. 19). In support, the vocational expert identified three representative occupations an individual with Elliott's age (50 years old at the time of the hearing), education (some college), work experience (no past relevant work), and RFC could perform:

    (1) Cashier II, DOT 211.462-010, light, SVP 2;

    (2) Housekeeping/Cleaner, DOT 323.687-014, light, SVP 2; and

5

      (3) Sales Attendant, DOT 299.677-010, light, SVP 2.

(Tr. 19, 37-38).[4] Relying on the vocational expert's testimony, the ALJ found Elliott had not been under a disability since May 26, 2017, the date the application was filed. (Tr. 24).

## II.  Analysis

    Elliott's appeal presents the following issues:

      (1)    Whether the ALJ properly considered Dr. Slutsky's opinion.

      (2)    Whether the ALJ's finding that Elliott can perform work at the "light" exertional level is supported by substantial evidence.

      (3)    Whether Elliot's inability to afford more aggressive treatment is a basis for denying benefits.

(Doc. 24, pp. 12-25).

### A.  Standard of review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper

---

[4] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020 (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B.     Whether the ALJ properly considered Dr. Slutsky's opinion

Elliott argues the ALJ erred by not affording substantial weight to examining physician Bradford A. Slutsky, M.D.'s opinion. (Doc. 24, pp. 12-21). The Court rejects Elliot's point of error because, for disability cases filed after March 27, 2017—such as this one—an ALJ does not defer or give any specific evidentiary

7

weight to a medical opinion. 20 C.F.R. § 416.920c(a).[5] Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(a)-(c).

Also, the new regulations differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section." 20 C.F.R. § 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 416.913(a)(3). The ALJ cited and applied this new standard to Slutsky's opinion, finding it unpersuasive. (Tr. 22). While Elliott applies the

---

[5] In addition, the legal authority cited by Elliott does not apply to the new regulations. (Doc. 24, p. 16).

incorrect standard, the Court will nevertheless consider the ALJ's findings in light of the new regulations.

At the end of the hearing, the ALJ noted the last consultative examination occurred in October 2017 and was completed by a podiatrist. (Tr. 62; *see* Tr. 1541-1542). The ALJ therefore made an appointment for Elliott to see Slutsky on March 18, 2019, for an updated consultative examination. (Tr. 62, 1658-1669). Slutsky completed a Range of Motion Report form and a Medical Source Statement of Ability To Do Work-Related Activities (Physical) form. (Tr. 1661-1669).

Slutsky determined—among other things—that Elliott could sit for two hours at one time, stand for thirty minutes at one time, and walk for thirty minutes at one time. Slutsky also found Elliott could sit for six hours, stand for one hour, and walk for one hour in an eight-hour workday. Slutsky acknowledged Elliott had MRIs of both her neck and lower back, but he had no access to them. Slutsky also acknowledged "it would be much more helpful to review some of the diagnostic studies if they are available. I will fill out the functional capacity form to the best of my ability." (Tr. 1665).

The ALJ was not persuaded by Slutsky's findings specifically as to Elliott's ability to stand or walk for one hour in an eight-hour workday with some postural, manipulative, and environmental limitations. The ALJ found the opinion inconsistent with a physical examination in which she had 5/5 strength in all four

9

extremities. The ALJ also found Slutsky's sit and stand limitations inconsistent with recent imaging of Elliott's lumbar spine that showed only mild multilevel degenerative disc changes and facet arthropathy with well-maintained intervertebral body heights. The ALJ pointed out that Slutsky formed his opinion without review of the MRI of Elliott's spine. Finally, the ALJ found Slutsky's opinion mainly consisted of range of motion findings and did not include a report of straight leg raise tests. (Tr. 22).

Elliott summarizes the MRI results and argues they actually support Slutsky's opinion concerning Elliott's ability to sit and stand. (Doc. 24, pp. 13-14). Elliot claims the ALJ mischaracterized the MRI results, improperly relied on State agency consultant Loc Kim Le, M.D's opinion (who Elliott claims also mischaracterized the MRI results), and thereby improperly considered Slutsky's opinion. (*Id.*, p. 15). At issue is the following statement by Dr. Le and repeated by the ALJ: "'There was no indication of spinal canal or neural foraminal stenosis.'" (Doc. 24, pp. 13-15). Elliott claims this statement is wrong. (Doc. 24, p. 15).

Le reviewed Elliott's physician, Leonard Pace, M.D.'s, findings regarding Elliott's November 6, 2017 MRI of the lumbar spine without contrast. (Tr. 126). Dr. Pace found:

> 1. L5-S1 bone-on-bone disc space narrowing and extensive Modic Type 2 endplate changes. In addition, there is a broad-based disc herniation and bony ridging complex effacing the

> thecal sac as much as 6 mm, resulting in lateral recess stenosis, right greater than left, and bilateral neural foraminal stenosis.
>
> 2. L4-L5 mild-to-mild-to-moderate spinal stenosis secondary to a broad-based disc protrusion and bony ridging complex and ligamentum flavum hypertrophy. There is neural foraminal stenosis greater on the left than the right.
>
> 3. L3-L4 disc space narrowing and broad-based disc protrusion and bony ridging complex effacing the thecal sac as much as 2.5 to 3 mm with neural foraminal stenosis on the left compared to the right.
>
> 4. L2-L3 right and left paracentral annulus bulge without a central component. *There is no spinal canal or neural foraminal stenosis.*

(Tr. 1557-1558 (emphasis added)). In his opinion, Le correctly summarizes Pace's MRI results. (Tr. 126). Likewise in the decision, the ALJ mirrors the language in Pace's summary of the MRI results. (Tr. 20). The ALJ does not *conclude* "[t]here is no indication of spinal or neural foraminal stenosis." (Tr. 20). Rather, the ALJ simply repeats Pace's final finding. (*Compare* Tr. 20, *with* 1557-1558).

Moreover, the ALJ found Le's opinion that Elliott is capable of performing a reduced range of light work activities with some postural, vision, and environmental limitations, supportable and consistent with the other medical evidence of record, specifically an x-ray showing mild multilevel degenerative disc changes and facet arthropathy in the lumbar spine. (Tr. 22). The Court finds no mischaracterization of the evidence by Le or by the ALJ and thus finds no error.

Elliott next argues that even if Slutsky reviewed the November 6, 2017 MRI—which he did not—the MRI actually reinforces Slutsky's opinion. (Doc. 24, pp. 12-

11

13). But this is pure speculation. By Elliott's own admission, an MRI is the preferred technique for assessing spine problems, and Slutsky did not have the opportunity to review Elliott's MRI. (Doc. 24, p. 15; Tr. 1660). Slutsky admitted "it would be much more helpful to review some of the diagnostic studies," referring to the MRI of Elliott's neck and lower back. (Tr. 1660). In finding his opinion unsupported, the ALJ correctly noted Slutsky's findings were made without review of the MRI. (Tr. 22).

Elliott also challenges the ALJ's reliance on an August 30, 2018 x-ray in support of the RFC findings. (Doc. 24, pp. 14-15). Elliott argues the x-ray was simply an observation made by a radiologist taken after Elliott had fallen and injured her hip, but not her spine. (*Id.*). But the ALJ properly summarized the x-ray report, which showed, "[i]ntervertebral heights are well maintained. There is mild multilevel degenerative disc changes and facet arthropathy." These x-rays may have been taken due to a fall causing injury to Elliott's hip, but even so, these x-rays were of the spine and the findings remain relevant. (Tr. 22, 1617).

The Court is also mindful that it "'may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). The Court finds the ALJ applied the correct

legal standard in his consideration of Slutsky's opinion, and the ALJ's findings are supported by substantial evidence.

## C. Whether the ALJ's finding that Elliot can perform work at the "light" exertional level is supported by substantial evidence

Elliott mainly reformulates her arguments from the first issue and applies them to the RFC determination. Elliott again argues the ALJ adopted Le's erroneous finding that "there is no spinal canal or neural foraminal stenosis" to find Elliott capable of performing light work. (Doc. 24, p. 22). The Court finds no merit to this argument.

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Because a Social Security disability adjudication is an inquisitorial proceeding, "ALJs do not simply act as umpires calling balls and strikes." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). "They are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*. At bottom, the task of determining a claimant's RFC and ability to work rests with the ALJ and not with a doctor. *Moore v. Comm'r of Soc.*

*Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016). Here, the ALJ found Elliott capable of performing light work with certain postural, manipulative, and environmental limitations. (Tr. 19).

Elliott argues Pace's examination supports a limited range of motion due to pain. (Doc. 24, p. 22; Tr. 1563). But as the ALJ noted, the treatment notes from Pace generally reflect significant improvement with medication. (Tr. 20, 1557, 1560, 1622). While Elliott may cite other medical evidence to support her argument, the ALJ considered all relevant medical evidence, and properly relied on Le's findings that Elliott could stand or walk for about six hours and sit for about six hours in an eight-hour workday. (Tr. 19-23, 124). Moreover, even if a claimant identifies other evidence in the record which may support a different conclusion, that does not mean the ALJ's decision is not supported by substantial evidence. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.").

Elliott also contends her condition was getting worse as shown by comparing a 2008 MRI with a 2017 MRI. (Doc. 24, pp. 22-23). Even so, the ALJ found Le's opinion persuasive and relied on it as well as other medical records to find Elliott capable of sitting, standing, and walking at a light exertional level. (Tr. 22, 126). The Court finds substantial evidence supports the RFC determination.

> D. **Whether Elliott's inability to afford more aggressive treatment is a basis for denying benefits**

Elliott argues the ALJ erred by finding her not disabled based on her inability to afford treatment. (Doc. 24, pp. 24-25). Elliott refers to a November 8, 2017 treatment note of Pace who stated Elliott "does not have insurance and cannot afford additional neurological intervention at this time." (Doc. 24, p. 24; Tr. 1564).

An "ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). An ALJ must consider evidence showing a claimant is unable to afford medical care before denying benefits based on non-compliance with care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that the claimant was unable to afford the prescribed medical treatment, then the ALJ must determine whether the claimant could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a claimant's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).

Elliott does not point to any reference by the ALJ that he denied benefits based on Elliott's non-compliance with a prescribed medical treatment, let alone that non-compliance with a prescribed medical treatment was the primary reason for the denial of benefits. The Court finds no error.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 31, 2021.

_Nicholas P. Mizell_
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE